Patricia **NEDEDOG**, Plaintiff–Appellant,

v.

**COLORADO DEPARTMENT OF HEALTH CARE POLICY AND FINANCING and Karen Reinertson, executive director, in her official capacity only, Defendants–Appellees.**

**No. 03CA1005.**

Colorado Court of Appeals,
Div. V.

Aug. 12, 2004.

Colorado Legal Services, Anne L. Haro Sipes, Fort Collins, Colorado, for Plaintiff–Appellant.

Ken Salazar, Attorney General, Laurie A. Schoder, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge WEBB.

In this judicial review of administrative action, plaintiff, Patricia Nededog, appeals the district court's judgment upholding a decision of defendants, Colorado Department of Health Care Policy and Financing (CDHCPF) and its executive director, Karen Reinertson, allowing the Larimer County Department of Human Services (County Department) to recover from her $5,795.40 in erroneously paid medical assistance (Medicaid) benefits. We affirm.

The initial decision of the administrative law judge (ALJ) concluded that the County Department could recover the erroneous Medicaid payments and that Nededog was not entitled to a waiver. The final agency decision of the CDHCPF Office of Appeals affirmed the ALJ's initial decision. The district court upheld the final agency decision.

Although the record does not include a transcript or audiotape of the telephone hearing before the ALJ, the parties treat the following facts as undisputed.

Until October 1998, Nededog received Supplemental Security Income (SSI), which made her eligible for Medicaid benefits under § 26–4–201(1)(i), C.R.S.2003, and federal law. Medicaid is a cooperative federal-state program which provides medical assistance to

low income persons. When she ceased receiving SSI, she was not eligible for Medicaid benefits on any other basis. Nevertheless, through no fault of Nededog's, she continued to receive Medicaid benefits.

In September 2000, the County Department discovered that Nededog was no longer receiving SSI, determined that she was not otherwise Medicaid eligible, and, on September 19, 2000, gave her written notice terminating her Medicaid benefits effective September 30, 2000. Nededog did not challenge the termination. As relevant here, the County Department then sought recovery of $5,795.40 in Medicaid benefits paid erroneously to Nededog from September 1999 to September 2000. Nededog contested the recovery claim.

## I. Scope of Review

■ In judicial review of administrative action, "the court shall determine all questions of law and interpret the statutory and constitutional provisions involved and shall apply such interpretation to the facts duly found or established." Section 24–4–106(7), C.R.S.2003. While we review an agency's statutory and regulatory interpretations de novo, we accord deference to the interpretation of a statute or regulation by the agency charged with its administration, and we generally accept that interpretation if it has a reasonable basis in the law and is warranted by the record. *Stell v. Boulder County Dep't of Soc. Servs.*, 92 P.3d 910 (Colo.2004).

We reverse final agency action only if it is arbitrary or capricious, contrary to law, an abuse of discretion, in excess of jurisdiction, based on clearly erroneous findings, or unsupported by substantial evidence. Section 24–4–106(7).

## II. Recovery of Medicaid Benefits Paid Erroneously Before Notice of Termination

■ Nededog first contends the County Department cannot recover the erroneous payments because she remained eligible for Medicaid benefits until ten days after she received the September 19, 2000 termination notice. We disagree.

When a person loses SSI, the Social Security Administration so informs the state agency responsible for Medicaid administration, and that agency must then determine whether the person is otherwise eligible for Medicaid benefits. 42 C.F.R. § 435.916(c)(1); § 26–4–106, C.R.S.2003.

If the agency determines that the person has no other basis for Medicaid eligibility, then the person must be sent a termination notice. However, eligibility for Medicaid benefits continues "until such person is determined to be ineligible." Section 26–4–106(1)(a), C.R.S.2003; *see* 42 C.F.R. § 435.930(b).

Written notice must be mailed at least ten days before the benefits are terminated. 42 C.F.R. § 431.211. The notice must include a description of the action to be taken, the reason for the action, and the legal authority for the action. 42 C.F.R. § 431.210; *see also* Colorado Department of Health Care Policy and Financing Reg. § 8.057.1.D, 10 Code Colo. Regs. 2505–10.

Termination of Medicaid benefits without the requisite ex parte consideration of other bases for eligibility and advance notice of termination is invalid. *Mass. Ass'n of Older Americans v. Sharp*, 700 F.2d 749 (1st Cir. 1983)(loss of AFDC); *Stenson v. Blum*, 476 F.Supp. 1331 (S.D.N.Y.1979)(loss of SSI), *aff'd without opinion*, 628 F.2d 1345 (2d Cir. 1980); *see also Weston v. Cassata*, 37 P.3d 469 (Colo.App.2001)(advance notice required to terminate welfare benefits); *Weaver v. Colo. Dep't of Soc. Servs.*, 791 P.2d 1230 (Colo.App.1990)(advance notice required to terminate Home and Community Based Services benefits, a component of Medicaid).

Federal Medicaid law does not limit a state agency's recovery of benefits paid erroneously. *See Oxenhorn v. Fleet Trust Co.*, 94 N.Y.2d 110, 700 N.Y.S.2d 413, 722 N.E.2d 492 (1999). Indeed, allowing recovery of such payments protects the assets of the Medicaid program as the "payor of last resort." S.Rep. No. 99–146 at 312, *reprinted in* 1986 U.S.C.C.A.N. 42,279; *see Oxenhorn v. Fleet Trust Co., supra* (upholding recovery of Medicaid benefits paid erroneously, despite paying agency's error). Moreover, Colorado law requires recovery of Medicaid benefits paid to a person who "was not lawfully entitled" to them. Section 26–4–403(1)(c),

C.R.S.2003; *see also* Colorado Department of Health Care Policy and Financing Reg. § 8.065.11, 10 Code Colo. Regs. 2505–10.

Here, Nededog argues that because the County Department could not terminate her Medicaid benefits until ten days after the September 19, 2000 notice, despite her 1998 loss of SSI and lack of any other basis for Medicaid eligibility, the County Department cannot recoup the erroneous payments going back to September 1999. According to Nededog, to do so would be an unlawful "retroactive" determination of her ineligibility. We are not persuaded.

Nededog's argument conflates the advance notice requirement to terminate Medicaid eligibility with the power to recover benefits paid erroneously. Once granted, a Medicaid recipient's eligibility continues until terminated. However, when Nededog ceased receiving SSI, she was no longer entitled to Medicaid benefits. Recovery under § 26–4–403(1)(c) turns on a lack of entitlement in the first instance, while the advance notice requirement relates to the procedures necessary to terminate payments that a recipient is not entitled to receive. While the County Department must give advance notice before terminating benefits being paid erroneously, its right to recover those payments accrued when the erroneous payments were made, not later when it terminated future payments.

Nededog cites no case, and we have found none, supporting her argument that recovery of erroneous payments constitutes an invalid, prenotice termination of Medicaid benefits. *Sharp, Stenson v. Blum, Weaver,* and *Weston v. Cassata,* on which she relies, all invalidated termination of public benefits for lack of advance notice. However, because Nededog does not dispute the adequacy of the notice to terminate her Medicaid benefits, these cases are inapposite to recovery of payments made erroneously before notice of termination.

To the extent that Nededog's argument requires us to reconcile § 26–4–106(1)(a), which provides that eligibility continues "until such person is determined to be ineligible" and requires advance notice of termination, with the mandate in § 26–4–403(1)(c) to recover payments for which the recipient "was not lawfully entitled," we rely on accepted principles of statutory construction and administrative law.

When faced with potentially conflicting statutory provisions, we seek a harmonious interpretation that gives effect to each provision while furthering the general purpose of the legislation. *People v. Luther,* 58 P.3d 1013 (Colo.2002). At the same time, we avoid an interpretation that would produce an unreasonable or absurd result. *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187 (Colo. 1996).

The advance notice requirement affords a recipient of public benefits a pretermination opportunity to be heard, consistent with procedural due process rights inherent in receipt of public benefits. *See generally Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Thus, due process protects the recipient against an erroneous termination of public benefits. *Goldberg v. Kelly, supra.*

A claim to recover benefits paid erroneously does not raise the same perils to the recipient as an unannounced termination of public benefits. And consistent with due process, a recipient who, like Nededog, is the subject of a claim to recover benefits paid erroneously is entitled to notice of the recovery action and an opportunity to be heard. Colorado Department of Health Care Policy and Financing Reg. § 8.065.3.31, 10 Code Colo. Regs. 2505–10.

Hence, we discern no conflict between requiring advance notice to terminate eligibility for Medicaid benefits and allowing recovery of benefits paid erroneously before notice of termination. Nededog's argument would preclude many recoveries of erroneous payments, which are usually retroactive in nature because Medicaid benefits can be terminated lawfully only upon advance notice. This would be an unreasonable result, which we reject. *Reg'l Transp. Dist. v. Lopez, supra.* For these reasons, we defer to CDHCPF's interpretation as having a reasonable basis in law. *See Stell v. Boulder County Dep't of Soc. Servs., supra.*

■ Alternatively, Nededog argues that the County Department's separate notice of overpayment to her was misleading and

therefore inadequate. She did not raise this argument during the proceedings below or in her opening brief on appeal. Therefore, it is not properly before us. *See Schempp v. Lucre Mgmt. Group, LLC*, 75 P.3d 1157 (Colo.App.2003).

Accordingly, we conclude that the County Department is not precluded from recovering Medicaid benefits to which Nededog was not entitled and which were paid erroneously before adequate notice of termination.

### III. Waiver of Recovery of Medicaid Benefits Paid Erroneously

■ Nededog next contends that because she is indigent, the County Department should have waived recovery of the Medicaid benefits paid erroneously. Again, we disagree.

The Colorado Medical Assistance Act, § 26–4–101, et seq., C.R.S.2003, governs administration of Medicaid in Colorado. *See Dodge v. Dep't of Soc. Servs.*, 657 P.2d 969 (Colo.App.1982). CDHCPF administers this program. Section 25.5–1–201(1)(c), C.R.S. 2003. As indicated, § 26–4–403(1)(c) requires recovery of Medicaid benefits paid to a recipient who was not entitled to them. This section does not provide for waiver of recovery claims.

Nevertheless, Nededog argues that authority to waive recovery of overpayments appears in the Colorado Public Assistance Act, § 26–2–101, et seq., C.R.S.2003, and regulations promulgated thereunder. Specifically, she points to § 26–2–128(4), C.R.S.2003, which authorizes waiver of recovering erroneous public assistance payments from a recipient who is without fault, if the recovery "would deprive a person of income required for ordinary and necessary living expenses or would be against equity and good conscience," and Colorado Department of Human Services Reg. § 3.810.21, 9 Code Colo. Regs. 2503–1. We are not persuaded.

The Colorado Public Assistance Act governs the administration of public assistance programs by the Department of Human Services. Likewise, § 3.810.21, the Human Services regulation that Nededog characterizes as allowing waiver, applies to "repayment of excess public assistance." Section 3.810.11. However, medical assistance "covered by the 'Colorado Medical Assistance Act,'" which is Medicaid, is excluded from the definition of "assistance payments," and hence from the definition of "public assistance." Section 26–2–103(2),(7) C.R.S.2003.

Nededog correctly points out that some provisions of the Public Assistance Act refer to the Medical Assistance Act and vice versa. Similar cross-referencing appears in the Human Services and CDHCPF regulations. For example, CDHCPF Reg. § 8.059.11 states that "[a]ppeals of financial eligibility determinations will be managed in accordance with rules" of Human Services. However, the issue before us is recovery of erroneous payments, not determination of eligibility.

Further, the only express waiver provisions in the Medical Assistance Act deal with claims against either the estate of a recipient, § 26–4–403.3(4), C.R.S.2003, or providers who received overpayment for reasons other than fraud, § 26–4–403(2)(a)(II), C.R.S.2003. Had the General Assembly intended to provide for waiver of claims to recover Medicaid benefits paid erroneously to a recipient such as Nededog, it could have expressly so stated. *See Reg'l Transp. Dist. v. Univ. of Colo. Hosp. Auth.*, 921 P.2d 56 (Colo.App.1996). In the absence of such legislative direction, we are bound by § 26–4–403(1)(c) and § 8.065.11, which provide for recovery of Medicaid benefits paid erroneously, but neither contain waiver language nor cross-reference any waiver regulation of Human Services.

The ALJ determined that the waiver provisions on which Nededog relies are "meant to apply to public assistance programs administered by the State Department of Human Services and not Medicaid administered by the State Department of Health Care Policy and Financing." Because this interpretation has a reasonable basis in law, we accord it deference. *Stell v. Boulder County Dep't of Soc. Servs., supra.*

Accordingly, we conclude the ALJ and CDHCPF properly rejected Nededog's assertion that the County Department should have waived the erroneous payment claim.

## IV. 42 U.S.C. § 1983

We also reject Nededog's final contention that the district court should have granted her relief under 42 U.S.C. § 1983.

In her complaint and in her brief to the district court, Nededog raised § 1983 in the same single sentence, "Because the agency denied Ms. Nededog rights guaranteed by the federal Medicaid Act, and the Due Process clause of the United States Constitution, the agency action violates 42 U.S.C. § 1983 as well." The district court's decision did not address § 1983.

Although a similar sentence appears in her opening brief on appeal, there Nededog presents no argument or legal authority supporting the § 1983 claim. And Nededog's reply brief does not mention § 1983 at all, despite CDHCPF's assertion in its answer brief that the § 1983 claim was not sufficiently developed to be properly before us.

Accordingly, we decline to consider this contention. *See Manka v. Martin,* 200 Colo. 260, 614 P.2d 875 (1980)(mere mention of 42 U.S.C. § 1983 insufficient to raise constitutionality of statute); *see also Comm. for Better Health Care v. Meyer,* 830 P.2d 884, 890 (Colo.1992)(declining to consider argument "stated in conclusionary form ... not accompanied by citations to any authority, and [presented] solely in the context of [other] arguments").

The judgment is affirmed.

Judge NIETO and Judge RUSSEL concur.